# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **J.D. and K.D., individually and on behalf of C.D.,** | Case No. 25–cv–11805–ESK–EAP |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **HADDONFIELD SCHOOL DISTRICT,** | |
| Defendant. | |

**THIS MATTER** having come before the Court on plaintiffs' motion for stay-put relief pursuant to 20 U.S.C. § (Section) 1415(j) (ECF No. 2); and the Court finding:

1. Plaintiff C.D. is a 19-year-old student with disabilities—including autism and attention deficit hyperactivity disorder—that adversely impact his ability to access educational services. (ECF No. 1 (Compl.) pp. 1–3.) Plaintiffs J.D. and K.D. are C.D.'s parents. (*Id.* p. 3.) Defendant Haddonfield School District is a local educational agency pursuant to the Individuals with Disabilities Education Act (IDEA). (*Id.*)

2. On June 17, 2024, plaintiffs filed a due-process petition seeking a stay-put, tuition reimbursement, and compensatory education. (ECF No. 11–1 pp. 8–25.) Administrative Law Judge (ALJ) Kathleen Calemmo held eight hearings between October and December 2024. (ECF No. 1 pp. 23–61 (ALJ Final Decision) pp. 24, 25.)[1] In her March 28, 2025 final decision, ALJ Calemmo concluded that defendant's "failure to adjust C.D.'s [individualized education programs (IEPs)] during eleventh and twelfth grades so that his services could be effectively implemented was a denial of a [free appropriate public education]." (*Id.* p. 53.) Further, defendant's "less than comprehensive effort to address C.D.'s avoidance behavior and executive functioning deficits" constituted a substantive violation of the IDEA, entitling C.D. to compensatory

---

[1] Plaintiffs included ALJ Calemmo's final decision in the same document as their complaint. Though I identify pages 23 through 61 of the filing at ECF No. 1 as the final decision, I follow my general convention of relying on the entire document's pagination for pin citations.

education. (*Id.* p. 55.) ALJ Calemmo ordered defendant to reimburse the cost of C.D.'s 2024–25 placement at Y.A.L.E., a private institution where J.D. and K.D. enrolled C.D. for his thirteenth school year. (*Id.* pp. 24, 55, 56.) Relevant to the parties' contentions, ALJ Calemmo further ordered "that any and all other requests for relief as set forth in [plaintiffs'] due process petition, if not addressed above, are **DENIED**, including [plaintiffs'] request for an award of additional compensatory education and reimbursement of any other costs and expenses."). (*Id.* p. 56.)

3. Plaintiffs filed suit in response,[2] alleging discrimination under the New Jersey Law Against Discrimination, Americans with Disabilities Act, and Rehabilitation Act; claiming entitlement to attorney's fees and costs; and asserting stay-put rights pursuant to Section 1415(j). (Compl. pp. 1–13.) Plaintiffs allege that ALJ Calemmo "erred in not specifically opining that C.D. continues to be eligible for special education" and seek clarification or reversal of ALJ Calemmo's decision in order to require defendant to provide continued programming to C.D. through the school year of his twenty-first birthday. (*Id.* pp. 8, 13.)[3]

4. On the same date that they filed suit, plaintiffs filed the instant motion following defendant's alleged refusal to pay for C.D.'s continued placement at Y.A.L.E. (ECF No. 2–1 (Pls.' Mot. Br.) p. 7.) Plaintiffs argue that they are entitled to tuition and transportation costs during the pendency of the parties' dispute because Y.A.L.E became C.D.'s current educational placement upon ALJ Calemmo's finding that C.D. was not provided a free appropriate public education. (*Id.* p. 11.) Following the parties' briefing on the motion, I held a hearing on August 11, 2025 during which the parties engaged in oral argument. (ECF No. 19.)

5. The IDEA requires the provision of a free appropriate public education to children with disabilities. *E.R. v. Stroudsburg Area Sch. Dist.*, 755 F. App'x 166, 168 (3d Cir. 2018). School districts provide students with free appropriate public educations through the design and implementation of

---

[2] The IDEA provides any party that has been aggrieved by the findings and decisions resulting from a due-process hearing the opportunity to file a civil action in district court. 20 U.S.C. § 1415(i)(2); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013). Though plaintiffs do not cite Section 1415(i)(2), a fair reading of the complaint expresses aggrievement as to ALJ Calemmo's decision to not award continued services for C.D.

[3] Defendant also filed a civil action in response to ALJ Calemmo's final decision under Docket No. 25–cv–12138. On August 11, 2025, I granted plaintiffs' motion to consolidate the two cases. (ECF No. 20.)

IEPs. *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 128 n. 4 (3d Cir. 2017). A student's eligibility for special education and related services extends to the age of 21. *See* 20 U.S.C. §1412(a)(1)(A); *L.G. ex rel. E.G. v. Fair Lawn Bd. of Educ.*, 486 F. App'x 967, 969 n.2 (3d Cir. 2012); *see also M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 222 (3d Cir. 2017) (noting the applicability of stay-puts in the context of students ages 21 and younger). The IDEA is intended to ensure that every child with special needs is provided a free appropriate public education to address those needs through its "comprehensive [and] remedial scheme." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (quoting *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 803 (3d Cir. 2007)).

6. Section 1415 sets forth the IDEA's procedural safeguards designed to "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *N. Highlands Reg'l High Sch. Bd. of Educ. v. C.E. ex rel. C.E.*, Case No. 18–08999, 2019 WL 5975548, at *6 (D.N.J. Nov. 12, 2019) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). Among these safeguards is the stay-put provision. *Id.* The stay-put provision provides that, absent an agreement between the parents and state or local educational agency, "during the pendency of any proceedings … the child shall remain in the then-current educational placement of the child …." 20 U.S.C. §1415(j).

7. The stay-put provision serves as "a type of 'automatic preliminary injunction'" that prevents local educational agencies from unilaterally changing a student's educational programming. *Y.B. ex rel. S.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 200 (3d Cir. 2021) (quoting *Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 650 (3d Cir. 2000)). Contrary to a motion filed pursuant to Federal Rule of Civil Procedure 65, the usual prerequisites for injunctive relief are not required for a stay-put. *See Hatikvah Int'l Acad. Charter Sch. v. E. Brunswick Twp. Bd. of Educ.*, 10 F.4th 215, 219 (3d Cir. 2021). These non-requisites include whether or not the plaintiff's case is meritorious, reflecting the priority placed in providing students with continuity in educational services. *See Cinnaminson Twp. Bd. of Educ. v. K.L.*, Case No. 16–03586, 2016 WL 4212121, at *4 (D.N.J. Aug. 9, 2016).

8. As referenced above, the stay-put provision applies to the student's then-current educational placement. 20 U.S.C. §1415(j). The IEP actually functioning at the time the stay-put provision is invoked is the dispositive factor in determining the student's current educational placement. *See Rena C. v. Colonial Sch. Dist.*, 890 F.3d 404, 415 (3d Cir. 2018). A stay-put may also apply to a new placement that the parents and local educational agency agree upon. *Id.* at 416. An administrative decision approving parents' unilateral

placement of their child constitutes an agreement to that new placement by the state for stay-put purposes.  *Id.*

9.   C.D.'s age and some of the ambiguities of the administrative decision make determining his current educational placement less straightforward than the cases cited by the parties.  I find that this case does not fit neatly into the indicators identified by the Third Circuit.

10.   Plaintiffs assert that ALJ Calemmo's determination that C.D. was not provided a free appropriate public education and was entitled to reimbursement of tuition expenses at Y.A.L.E. constituted a change in placement to Y.A.L.E.  (Pls.' Mot. Br. pp. 10–11.)  However, during the August 11, 2025 hearing, neither party disputed that ALJ Calemmo declined to award prospective relief and—to the contrary—expressly denied any relief beyond reimbursement of 2024–25 tuition and transportation costs.  The parties have also clearly not agreed to continued placement at Y.A.L.E.

11.   C.D.'s graduation status was also discussed during the hearing and is a point of ongoing contention between the parties.[4]  When asked what C.D.'s current educational placement should be, defendant's counsel responded that it should be based on the most recent IEP.  I find this suggestion troubling given ALJ Calemmo's conclusion that defendant's failure to adjust C.D.'s IEPs during his eleventh- and twelfth-grade years constituted a denial of a free appropriate public education. (*See* ALJ Final Decision p. 53.)  It would be wholly irrational and contrary to the remedial purpose of the IDEA to determine that C.D.'s placement during the pendency of proceedings must be in the very program that has been found to be violative of the IDEA during these same proceedings.

12.   Without a valid IEP in place, agreement between the parties as to C.D.'s current educational placement, or an administrative decision setting forth C.D.'s prospective placement, I turn to C.D.'s most recent educational setting—Y.A.L.E.  "If no IEP is in effect when the dispute arises, the stay-put placement is that under which the child is actually receiving instruction at

---

[4] Graduation constitutes a change in placement under the IDEA, triggering notice requirements and procedural protections.  34 C.F.R. § 300.102(a)(3)(iii); *D.C. v. Mount Olive Twp. Bd. of Educ.*, Case No. 12–05592, 2014 WL 1293534, at *31 (D.N.J. Mar. 31, 2014).

the time the dispute arises." *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 384 F. App'x 58, 61 (3d Cir. 2010).[5]

13. Continued placement at Y.A.L.E. is appropriate, not necessarily because of the award of compensatory education—which was expressly limited to the 2024–25 school year. Rather, Y.A.L.E. represents C.D.'s place of educational instruction at the time the dispute arose and in the absence of an effective IEP, agreement between the parties, or clear supporting administrative decision. Placement at Y.A.L.E. during the pendency of this action further is consistent with the IDEA's remedial purpose, *see G.L.*, 802 F.3d at 618, and the priority the stay-put provision places on continuity in educational services, *see K.L.*, 2016 WL 4212121, at *4.

Accordingly,

**IT IS** on this **19th** day of **August 2025 ORDERED** that:

1. Plaintiffs' motion at ECF No. 2 is **GRANTED**. Defendant shall comply with C.D.'s stay-put placement by assuming tuition and transportation costs for C.D. to attend Y.A.L.E. School for the 2025-26 school year and thereafter until further order of the Court.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

---

[5] A court within this District recently cited *L.Y.* when faced with a similarly difficult question of current educational placement. *See M.O. v. N. Brunswick Twp. Bd. of Educ.*, Case No. 23–03469, 2024 WL 2796448, at *6 (D.N.J. May 31, 2024). The student in *M.O.*, like C.D., was otherwise past graduation age and the school district agreed to place her in a private school through June 2023. *Id.* at *2–3. Prior to the June 2023 expiration, the student's parents sought an additional year of private placement and their motion to keep the student in private placement was denied by the ALJ. *Id.* at *3. The court determined that there was no functioning IEP and went on to affirm the ALJ's decision, concluding that the stay-put provision was not implicated because the student's placement in private school terminated at the end of June 2023. *Id.* at *7–8. In the absence of on-point authority cited by the parties, *M.O.* offers some persuasive value at first blush. Ultimately, I resolve that the date-certain conclusion of the *M.O.*'s student's private placement is distinguishable from the forward-looking ambiguity at issue here. C.D.'s current placement is not expressly addressed in ALJ Calemmo's decision and the parties have not sought clarification or reconsideration.

5