UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **J.D. and K.D., individually and on behalf of C.D.,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**HADDONFIELD SCHOOL DISTRICT,**<br><br>    **Defendant.** | Case No. 25–cv–11805–ESK–EAP<br><br>OPINION |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on defendant Haddonfield School District's motion to stay (ECF No. 26) the Court's August 19, 2025 order granting plaintiffs' request for stay-put relief (ECF No. 25 (Aug. 19, 2025 Order)). For the following reasons, the motion will be DENIED.

### I.  BACKGROUND

Plaintiff C.D. is a 19-year-old student with disabilities and plaintiffs J.D. and K.D. are C.D.'s parents. (ECF No. 1 pp. 1–13 (Compl.) pp. 1–3.) Defendant is a local educational agency under the Individuals with Disabilities Education Act (IDEA). (*Id.* p. 3.)

On June 5, 2024, defendant notified plaintiffs in writing that it intended to graduate C.D. (ECF No. 11–1 pp. 8–25 (Due Process Pet.) p. 20.) Plaintiffs thereafter filed a due process petition seeking an order enjoining defendant from graduating C.D. pursuant to the IDEA's stay-put provision, finding that Y.A.L.E. School constituted a proper placement for C.D., and directing the "reimbursement for the costs of the private program and placement at Y.A.L.E. School … including but not limited to payment of tuition and fees, related

services costs, and transportation, for the 2024–25 school year." (*Id.* pp. 24, 25.)

Administrative Law Judge (ALJ) Kathleen Calemmo held eight hearings between October and December 2024. (ECF No. 1 pp. 23–61 (ALJ Final Decision) pp. 24, 25.) In her March 28, 2025 final decision, ALJ Calemmo determined that defendant's "failure to adjust C.D.'s [individualized education programs] during eleventh and twelfth grades so that his services could be effectively implemented was a denial of a [free appropriate public education]" and that C.D. was entitled to compensatory education. (*Id.* pp. 53, 55.) Defendant was ordered to reimburse the cost of C.D.'s 2024–25 placement at Y.A.L.E. but plaintiffs were denied "any and all other requests for relief as set forth in [their] due process petition." (*Id.* pp. 55, 56.)

Plaintiffs filed this action on June 16, 2025, arguing that ALJ Calemmo "erred in not specifically opining that C.D. continues to be eligible for special education." (Compl. p. 8.)[1] Plaintiffs then filed a motion to have Y.A.L.E. deemed C.D.'s current educational placement pending resolution of the case and to require defendant pay for C.D.'s tuition and transportation during the pendency of the appeal. (ECF No. 2.) After the motion was fully briefed, I held a motion hearing. (ECF No. 19.)

I granted plaintiffs' motion. (Aug. 19, 2025 Order.) I recognized that the stay-put provision applies to a student's then-current educational placement. (*Id.* p. 3.) Then-current educational placement is generally dependent on the student's individualized education program but may also include a new placement initiated by parents if the parents and local educational agency agree to the placement or an administrative decision approves of the parents' unilateral placement. (*Id.* pp. 3, 4.) C.D.'s age and

---

[1] Defendant also filed a civil action in response to ALJ Calemmo's decision. I granted plaintiffs' motion to consolidate the two actions on August 11, 2025. (ECF No. 20.)

some ambiguities in the administrative decision rendered determining C.D.'s current educational placement a challenge, particularly in light of ALJ Calemmo's clear denial of relief beyond reimbursement of 2024–25 tuition and transportation costs. (*Id.* p. 4.) Ultimately, I was troubled by defendant's position that C.D.'s placement was to be premised on C.D.'s individualized education program, which ALJ Calemmo had found denied C.D. of a free appropriate public education. (*Id.*) I concluded that the IDEA's remedial purpose was best served by continued placement at Y.A.L.E.—particularly in the absence of a valid individualized education program or order directing continued services. (*Id.* pp. 4, 5.)[2] The pending motion followed. That same day, defendant filed a notice of appeal to the Third Circuit. (ECF No. 27.)

## II. STANDARD

A stay put pursuant to 20 U.S.C. § 1415(j) acts as "a type of 'automatic preliminary injunction'" that prevents local educational agencies from unilaterally changing a student's educational programming. *Y.B. ex rel. S.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 200 (3d Cir. 2021) (quoting *Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 650 (3d Cir. 2000)). Pursuant to Federal Rule of Civil Procedure 62, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants … an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or

---

[2] Defendant argues that "a compensatory education award does not as a matter of law equate to a 'stay-put' placement," (ECF No. 26–1 (Def.'s Mot. Br.) p. 8) and that the August 19, 2025 order "erroneously juxtaposes the ALJ's award of 'compensatory education' with 'placement' contrary to the IDEA's statutory language and interpretive case law," (ECF No. 38 p. 6). To the express contrary, I concluded that continued placement at Y.A.L.E. was appropriate "not necessarily because of the award of compensatory education—which was expressly limited to the 2024–25 school year." (Aug. 19, 2025 Order p. 5.) Rather, I determined that placement at Y.A.L.E. best served the IDEA's remedial purpose in light of ALJ Calemmo's decision not to grant further relief, ambiguity as to C.D.'s graduation status, and the lack of valid individualized education program with which to determine current placement. (*Id.* pp. 4, 5.)

other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d); *see also* Fed. R. App. P. 8(a)(1)(C) ("A party must ordinarily move first in the district court for … an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." (spacing omitted)).

Whether to issue a stay is a matter of judicial discretion. *Sunbelt Rentals, Inc. v. Love*, Case No. 20–17611, 2021 WL 2349855, at *1 (D.N.J. June 9, 2021). In exercising that discretion, courts consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).[3]

The first two factors "are the most critical." *Id.* at *2 (quoting *Nken*, 556 U.S. at 434). A stay pending appeal "is an extraordinary remedy" and the burden is on the movant to demonstrate that the circumstances warrant a stay. *Id.* at *1–2 (quoting *Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, Case No. 13–1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013)).

---

[3] The parties both cite Federal Rule of Civil Procedure 62 as the appropriate standard with which to consider defendant's motion. (Def.'s Mot. Br. p. 4; ECF No. 32 (Pls.' Opp'n Br.) p. 7.) Recently, a court within this Circuit determined that "[t]he four-factor test to stay an administrative panel decision does not apply to requests for injunctive relief encompassed by the stay-put provision of the IDEA." *Willis ex rel. Hampton v. Adult and Prison Educ. Res. Workshop*, Case Nos. 22–01615, 23–00391, 23–00468, 2025 WL 1744059, at *2 (D. Del. June 24, 2025). This was because the stay-put provision required the defendant to provide services and other relief during the pendency of appeals. *Id.* at *3. Though *Willis* is factually distinguishable from this case in that the challenged orders were entered by administrative panels rather than the court, I find its reasoning persuasive. The same four-factor test for preliminary injunctions pursuant to Federal Rule of Civil Procedure 65 similarly does not apply to stay puts. *See Trenton Pub. Sch. Dist. Bd. of Educ. v. A.C. ex rel. K.C.*, Case No. 23–20295, 2023 WL 6294883, at *4 (D.N.J. Sept. 27, 2023). I still apply the four-factor test to defendant's motion because denial is nevertheless warranted.

### III. DISCUSSION

#### A. **Likelihood of Success on the Merits**

Defendant's argument as to its likelihood of success on the merits focuses heavily on its position that C.D. graduated and is therefore no longer eligible for special education services. (Def.'s Mot. Br. pp. 7, 8.) The awarding of compensatory education does not equate to a stay-put, there is no evidence that placement at Y.A.L.E. is appropriate moving forward, and ALJ Calemmo made no such prospective findings, according to defendant. (*Id.* p. 8.) Defendant asserts that a stay put requires an individualized education program and no such program was in effect because C.D. graduated in June 2024. (*Id.* p. 9.)

Plaintiffs maintain that C.D. has not graduated because they invoked the stay-put provision to prevent C.D.'s graduation in June 2024. (Pls.' Opp'n Br. p. 8.) The stay put continues through the appellate process, according to plaintiffs. (*Id.* pp. 8, 9.)

There is no dispute that graduation constitutes a change in placement under the IDEA. I recognized as much in the August 19, 2025 order. (Aug. 19, 2025 Order p. 4 n. 4.) However, as an initial matter, while defendant contended that ALJ Calemmo rejected plaintiffs' request to enjoin graduation (ECF No. 11 pp. 8, 11), it did not argue in opposition to plaintiffs' stay-put motion that C.D. had graduated and thus no individualized education program was in effect. Rather, the question of whether C.D. had graduated was first raised by me during the August 11, 2025 motion hearing. (ECF No. 39 p. 10:17–19.) Defendant's counsel represented that C.D. graduated at the end of his thirteenth school year, but that fact was not in the record. (*Id.* pp. 10:20–11:5.) When asked whether a student could have no current placement, counsel stated that placement would be premised on C.D.'s last agreed-upon individualized education program, placing him in Haddonfield High School. (*Id.* pp. 13:19–14:10) Plaintiffs countered that C.D. did not graduate because

he did not receive a diploma and they filed a due process petition contesting graduation. (*Id.* pp. 11:13-12:8.) My decision was premised in large part on C.D.'s unresolved graduation status and the illogicality of reverting to an individualized education program that ALJ Calemmo determined denied C.D. of a free appropriate public education. (Aug. 19, 2025 Order pp. 4, 5.)

The affirmative argument that C.D. graduated was thus first presented— in response to my inquiry—at oral argument and waived by defendant. *Altice USA, Inc. v. N.J. Bd. of Pub. Utils.*, Case No. 19–21371, 2020 WL 359398, at *8 n.9 (D.N.J. Jan. 22, 2020) (disregarding an argument first raised at oral argument); *Customers Bank v. Harvest Cmty. Bank*, Case No. 12–05878, 2014 WL 4182348, at *6 n.5 (D.N.J. Aug. 20, 2014) ("A 'newly minted argument raised for the first time during oral argument' is 'problematic.'" (quoting *Millipore Corp. v. W.L. Gore & Assocs., Inc.*, Case No. 11–01453, 2011 WL 5513193, at *9 (D.N.J. Nov. 9, 2011))).

Even considering defendant's argument, the record is not clear that C.D. has graduated. "The obligation to make [free appropriate public education] available to all children with disabilities does not apply with respect to … Children with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. §300.102(a)(3)(i) (spacing omitted). Defendant supports its motion to stay with the certification of Superintendent Chuck Klaus. (ECF No. 26–2 pp. 49, 50 (Klaus Certification).)[4] Klaus states that C.D. met all graduation requirements as of June 2024, attended senior-year events, and participated in graduation—though he did not accept his actual diploma. (*Id.*) These facts, if accepted, do not definitively support the contention that C.D. "graduated from high school with a regular high school diploma." *See* 34 C.F.R. §300.102(a)(3)(i); *see also A.R. v. Conn. State Bd. of*

---

[4] The certification does not state that it was made under penalty of perjury. *See* 28 U.S.C. §1746.

*Educ.*, 5 F.4th 155, 160–63 (2d Cir. 2021) (affirming the district court's conclusion that there was at least a triable issue of fact as to standing based, in part, on the original named plaintiff's receipt of credits necessary to graduate but refusal to accept a diploma).

Furthermore, graduation from high school with a regular high school diploma constitutes a change in placement, triggering notice requirements. *See* 34 C.F.R. §300.102(a)(3)(iii). "Because graduation amounts to an IDEA 'change in placement,' it triggers the procedural protections of the IDEA, and parents may contest the proposed graduation through the due process hearing." *D.C. v. Mount Olive Twp. Bd. of Educ.*, Case No. 12–05592, 2014 WL 1293534, at *31 (D.N.J. Mar. 31, 2014) (quoting 34 C.F.R. §300.102(a)(3)(iii)). Plaintiffs did just that, filing their due process petition on June 17, 2024 (Due Process Pet.), the day before the graduation ceremony (Klaus Certification pp. 49, 50). The record does not show what, if any, actions defendant has taken since ALJ Calemmo's final decision and I have separately granted plaintiffs' request for continued placement at Y.A.L.E. *See Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1084 (D.N.J. 2011) (concluding that—despite the ALJ not finding that the private placement became the student's "stay put" placement—the student "was entitled to remain there pending the District's appeal … with such placement funded by the District" by virtue of the court's order granting of the parents' preliminary injunction motion); *see also Doe v. Marlborough Pub. Schs.*, Case No. 09–11118, 2010 WL 2682433, at *10 (D. Mass. June 30, 2010) ("[T]he stay-put provision applies when the graduation itself is disputed." (collecting cases)). I thus conclude that defendant has not made a strong showing that it is likely to succeed on the merits.

### B. <u>Irreparable Injury</u>

Defendant argues that financial harms, coupled with operational disruptions, constitute irreparable injury if its motion is not granted. (Def.'s

Mot. Br. p. 9.) Defendant's limited funding mechanisms leave a superintendent appropriation and the elimination of a fulltime teaching position or instructional services as among the only means to absorb the cost of C.D.'s placement at Y.A.L.E. (*Id.* pp. 10, 11.) Associated financial instability may further impact defendant's long-term planning and contractual obligations. (*Id.* p. 11.) The irreparable harm is more apparent where, as here, C.D. has already graduated, according to defendant. (*Id.* p. 12.)

Plaintiffs respond that it is defendant's burden to demonstrate a likely—as opposed to possible—irreparable injury and monetary loss is not irreparable. (Pls.' Opp'n Br. pp. 9–11.) The argument that defendant cannot pay for C.D.'s placement out of its large budget is dubious, according to plaintiffs, and defendant's supporting certification merely states that elimination of a fulltime teaching position and instructional services is among the ways defendant may fund C.D.'s placement. (*Id.* p. 12.)

I have already rejected defendant's argument as to whether C.D. has graduated. Insofar as defendant premises irreparable injury on financial impact, I further agree with plaintiffs that such harm is insufficient to warrant a stay and similar motions have been denied under comparable circumstances. "[C]ourts in this Circuit have denied requests by school districts for stays of IDEA awards on the basis that the harm posed by the school districts' interim financial responsibility for a student's tuition pending appeal was not irreparable at all." *N. Highlands Reg'l High Sch. Bd. of Educ. v. C.E.*, Case No. 18–08999, 2018 WL 5630761, at *6 (D.N.J. Oct. 31, 2018) (collecting cases); *see also Randolph Bd. of Educ. v. M.T.*, Case No. 22–01762, 2022 WL 2870204, at *4 (D.N.J. July 21, 2022) ("[M]onetary damages alone do not constitute irreparable harm.").

The harm here is not merely monetary, according to defendant. It includes with its motion the certification of Michael Catalano, business

administrator. (ECF No. 26–2 pp. 52, 53 (Catalano Certification).)[5] Catalano states that placement at, and transportation to, Y.A.L.E. for the 2025–26 school year would cost an estimated $103,000. (*Id.* p. 52.) Defendant cannot fund this cost through its budget because the expense was not presented during the annual budget period and maintenance reserve funds cannot be used because they are limited to issues affecting the health and safety of students and staff. (*Id.* p. 53.) As such, funding must occur through a superintendent appropriation and "[o]ne of the only ways to 'appropriate' or 'find' $103,000 (at least) for a non-budgeted unanticipated expense is to eliminate a full-time teaching position and/or other instructional services in the District." (*Id.*)

I agree with plaintiffs that Catalano's certification sets out one of purportedly few potential courses of action if a stay is not granted, not necessarily the likely course. "[A]n irreparable injury must be likely not just merely possible." *M.T.*, 2022 WL 2870204, at *4. More to the point, even accepting defendant's representation does not lead me to the conclusion that irreparable injury would result absent a stay. The decision in *Borough of Palmyra, Board of Education v. F.C. ex rel. R.C.*, 2 F. Supp. 2d 637 (D.N.J. 1998), is instructive. There, the ALJ concluded that the board failed to provide the student with a free appropriate public education and the student was entitled to private placement under Section 504 (as opposed to the IDEA). *See id.* at 639–40. The board appealed, the family filed a counterclaim seeking to compel compliance with the ALJ's order, and the board cross-moved for a stay. *Id.* at 640–41. Arguments including raising taxes, cutting programs, and depleting a budget surplus—similar to those advanced by defendant here— were raised as part of the public-interest prong of the stay analysis. *See id.* at 645. The court rejected such arguments, citing the relatively modest

---

[5] Like the Klaus certification, Catalano's certification does not indicate that it was made under penalty of perjury. *See* 28 U.S.C. §1746.

remaining tuition and transportation costs as compared to the board's overall budget and the strong interest in holding the board to its duty to provide students with free appropriate public educations. *Id.*

Though addressed in a distinct part of the analysis, I find that similar considerations apply here. The purported irreparable injury is largely financial and any further injury is merely "[o]ne of the only" courses of action. It nevertheless does not weigh against defendant's responsibility in providing C.D. with a free appropriate public education, and I find that this factor does not favor a stay.

### C. Harm to Plaintiffs and the Public Interest

Having determined that the most critical factors disfavor defendant's motion, I turn to the final two factors: injury to other interested parties and the public interest. *See Sunbelt Rentals, Inc.*, 2021 WL 2349855, at *1–2.

Defendant submits that a stay would serve the public interest by preventing the need to raise taxes and eliminate programming or teaching positions. (Def.'s Mot. Br. p. 12.) Harm to plaintiffs would be purely financial and would not come with the same associated public effects. (*Id.*) Defendant further asserts that a compensatory education does not equate to current educational placement and not granting a stay would create uncertainty for parents and districts and open the floodgates to additional efforts to extend students' education at the public's expense. (*Id.* pp. 12–14.) Defendant cites *F.C.* for the proposition that the public interest is furthered by enforcement of ALJ decisions, with ALJ Calemmo denying additional relief here. (*Id.* p. 13 (citing *F.C.*, 2 F. Supp. 2d at 645).)

Plaintiffs claim that they have already paid for C.D.'s 2024–25 placement at Y.A.L.E. and defendant has not sought to stay enforcement of ALJ Calemmo's order or reimbursed plaintiffs. (Pls.' Opp'n Br. p. 13.) A single family's capacity to pay tuition costs cannot be compared to that of a school

district, according to plaintiffs. (*Id.*) Further, the public interest is served by preserving disabled students' right to appropriate placement. (*Id.* p.14.)

Courts within this Circuit have found the financial strain placed on families paying private tuition disfavors imposition of a stay. *See, e.g.*, *Edison Twp. Bd. of Educ. v. F.S.*, Case No. 17–00053, 2017 WL 6627415, at *7 (D.N.J. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 6626316 (D.N.J. Dec. 27, 2017). For instance, in *School District of Philadelphia v. Kirsch*, the court applied the stay-put provision and determined that the district was required to reimburse the cost of the students' private placement for the 2013–14 and 2014–15 school years and "*through the exhaustion of all appeals*" despite the fact that the hearing officer found that free appropriate public educations were provided in December 2013. Case Nos. 14–04910 & 14–04911, 2016 WL 5887674, at *1 (E.D. Pa. Oct. 6, 2016). Judgment was entered in favor of the parents and the district filed notices of appeal and sought a stay. *Id.* at *2. The court denied the stay, concluding that staying the stay put would contravene the latter's purpose and force parents into choosing between an inadequate educational setting or private instruction at their own cost. *Id.* at *3. "Congress sought to eliminate this dilemma through its enactment of §1415(j)." *Id.* (quoting *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009)).

I am persuaded by this reasoning, which further leads into the public interests at stake. As stated above, defendant has identified the possibility—as opposed to likelihood—that instruction will be impacted by the denial of a stay. Defendant submits that the August 19, 2025 order conflates compensatory education and current educational placement and may open the floodgates to other litigation. This both misinterprets the August 19, 2025 order and ignores the fact that the "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial

11

district, or even upon the same [district] judge in a different case." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017) (alteration in original) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011)). Meanwhile, I find that the public interest is well-served by holding school districts to their responsibility to provide free appropriate public educations to students. *F.C.*, 2 F. Supp. 2d at 645. On the balance, I conclude that the final two factors do not support imposition of a stay.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion at ECF No. 26 will be DENIED. An appropriate order accompanies this opinion.

                                              */s/ Edward S. Kiel*
                                              **EDWARD S. KIEL**
                                              **UNITED STATES DISTRICT JUDGE**

Dated: October 29, 2025